**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DENNIS VARNER, ) | CASE NO. 1:12-CV- 1857 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, Dennis Varner ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying his applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a), and Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I.  PROCEDURAL HISTORY**

On August 21, 2008, Plaintiff filed his applications for SSI, DIB and POD, alleging a disability onset date of January 1, 2007.  (Transcript ("Tr.") 13.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On December 20, 2010, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented

by counsel, and testified. (*Id*.) A vocational expert ("VE") also participated and testified. (*Id*..) On January 24, 2011, the ALJ found Plaintiff not disabled. (Tr. 1, 24.) On June 1, 2012, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On January 9, 2012, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14, 15.) Plaintiff argues that substantial evidence does not support the ALJ's determination of his residual functional capacity ("RFC") because the ALJ failed to: (1) evaluate the opinions of his treating psychiatrists; and (2) incorporate into the RFC the entire opinion of another treating psychiatrist, despite granting her opinion great weight.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on September 21, 1967, and was 39 years old on his alleged disability onset date. (Tr. 22.) Plaintiff completed high school in a vocational work program. (Tr. 39.) He had past relevant work as an apartment maintenance worker and a construction worker. (Tr. 50-51.)

### B. Relevant Medical Evidence[1]

#### 1. Therapy and Treatment Notes

On January 2, 2003, Plaintiff underwent a psychiatric evaluation at Far West

---

[1] In addition to the mental limitations that are at issue in this case, the ALJ assigned Plaintiff physical limitations. (Tr. 17.) Plaintiff does not raise any argument regarding the physical limitations in his RFC. (Plaintiff's Brief ("Pl. Br.") at 5.)

2

Center ("Far West").  (Tr. 320-23.)  He complained of depression that had increased as a result of recent financial difficulties.  (Tr. 320.)  A physician diagnosed Plaintiff with major depressive disorder (recurrent), and assigned him a Global Assessment of Functioning ("GAF") score of 65.  (Tr. 322.)  Plaintiff returned to Far West on September 2, 2005, noting "I am depressed, always upset [and] angry."  (Tr. 316.)  He reported that, for about one year prior, he had "been having an exacerbation of his depression, anxiety [and] anger."  (*Id*.)  The physician diagnosed Plaintiff with bipolar disorder (not otherwise specified), and prescribed him Depakote and Xanax.  (Tr. 319.)

From October 17, 2007 to May 26, 2009, Plaintiff was occasionally evaluated by Sara Zuchowski, M.D., physician at Far West.[2]  In October 2007, noting Plaintiff's complaints of hopelessness, anxiety and "terrible dreams," Dr. Zuchowski prescribed him Lexapro and Wellbutrin.  (Tr. 402.)  She observed that Plaintiff had good hygiene and linear though processes, and that he maintained eye contact.  (Tr. 403.)  In November 2007, Plaintiff reported that he was singing in a band and writing music, but still experienced periods of depression.  (Tr. 401.)  Dr. Zuchowski increased Plaintiff's dosage of Lexapro.  (*Id*.)  Plaintiff's complaints of desperation, anxiety and depression continued throughout 2007 and 2008.  (Tr. 396 (Feb. 26,2008), 398 (Jan. 9, 2008),  400 (Dec. 12, 2007) However, Dr. Zuchowski consistently noted that Plaintiff engaged in appropriate conversation, maintained good eye contact and had goal-oriented thought processes.  (Tr. 399 (Jan. 9, 2008), 400 (December 12, 2007)  In January 2008, she decreased Plaintiff's dosage of Depakote and added Seroquel to his treatment regimen.

---

[2]  The signature of the physician who treated Plaintiff during this time is illegible in the transcript.  (*See, e.g,* Tr. 402.)

3

(Tr. 398.)  In June 2008, Dr. Zuchowski prescribed Adderall after Plaintiff reported that he had been taking his mother's Adderall and "notice[d] a clarity to his thinking."  (Tr. 326.)  Throughout the remainder of 2008, Plaintiff reported some improvement in his symptoms.  (Tr. 324 (July 3, 2008), 377 (Sept. 29, 2008)).  In December 2008, Dr. Zuchowski instructed Plaintiff to seek counseling "to address self esteem/coping skills."  (Tr. 375.)

In June 2009, Plaintiff began attending counseling sessions with counselor Scott Lee, M.Ed., PCC, at Far West.  (Tr. 577.)  Lee generally noted that Plaintiff was alert, oriented and appropriate (*see, e.g.,* Tr. 563, 571, 572), and had good hygiene and grooming (*see, e.g,* Tr. 563, 571, 572, 576.)  Lee also observed that Plaintiff was occasionally agitated (Tr. 572, 574), sad (Tr. 571), or excessively angry (Tr. 571).  Throughout his treatment of Plaintiff, Lee worked with Plaintiff on coping skills to address his anger and reactions to stressful situations.  In early 2010, Lee noted that Plaintiff was "learning to cope and about self" (Tr. 563 (Jan. 25, 2010), and that he was "making progress toward coping" (Tr. 557 (May 4, 2010).  Lee opined that Plaintiff was "learning to manage [his] anger and agitation" (Tr. 548 (Sept. 9, 2010), and that Plaintiff was "learning to cope [with] anger" (Tr. 546 (Oct. 7, 2010).  In late 2010, despite the death of Plaintiff's grandmother and an altercation with Plaintiff's uncle that resulted in criminal charges against Plaintiff, Lee observed that Plaintiff had "made progress towards [decreasing and] expressing anger appropriately."  (Tr. 244 (Dec. 2, 2010)).

Plaintiff also received treatment at Far West from Noreen Brady, Ph.D., APRN-BC.  (Tr. 580, 581, 583.)  On July 29, 2010, Dr. Brady noted that Plaintiff was sleeping a lot and reported talking to himself since the death of his dog.  (Tr. 583.)  She noted

4

that he was he "neat, clean" and maintained direct eye contact.  (*Id*.)  On July 29, 2010, Dr. Brady decreased Plaintiff's dosage of Depakote after Plaintiff expressed concerns about the side effects.  (Tr. 581.)  On December 23, 2010, Dr. Brady noted that Plaintiff was "coping to the best of his ability [with] recent psychostressors."  (Tr. 580.)

**2.     Medical Source Statements**

On June 2, 2009, Dr. Zuchowski completed a medical source statement.  (Tr. 447-48.)  With respect to making occupational adjustments, she opined that Plaintiff had: (1) a good ability to follow work rules and use good judgment; (2) a fair ability to maintain attention and concentration for extended periods of two-hour segments, respond appropriately to changes in routine settings, maintain regular attendance and be punctual within customary tolerance, deal with the public, relate to co-workers, interact with supervisors, function independently without special supervision, and work in coordination with or proximity to others without being unduly distracted or distracting; (3) a poor ability to deal with work stresses; and (4) a fair-to-poor ability to complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 447-48.)

With respect to intellectual functioning, Dr. Zuchowski opined that Plaintiff had: (1) a good ability to understand, remember and carry out simple job instructions; and (2)  a fair ability to understand, remember and carry out complex job instructions and detailed, but not complex, job instructions.  (Tr. 448.)  With respect to making personal and social adjustment, Dr. Zuchowski assigned Plaintiff: (1) a fair ability to maintain his appearance, behave in an emotionally stable manner, relate predictably in social

5

situations and manage his funds/schedule; and (2) a good ability to leave home on his own. (*Id.*)

On November 18, 2010, Mr. Lee and Dr. Brady completed a medical source statement. (Tr. 539-40.) With respect to making occupational adjustments, they opined that Plaintiff had: (1) a good ability to maintain regular attendance and be punctual within customary tolerance, and to function independently without special supervision; (2) a fair ability to follow work rules, use judgment, and work in coordination with or proximity to others without being unduly distracted or distracting; and (3) a poor ability to maintain attention and concentration for extended periods of two-hour segments, respond appropriately to changes in routine settings, deal with the public, relate to co-workers, interact with supervisors, deal with work stresses, and complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 539-40.)

With respect to intellectual functioning, Dr. Brady and Mr. Lee assigned Plaintiff: (1) a good ability to understand, remember and carry out simple job instructions; and (2) a fair ability to understand, remember and carry out complex job instructions and detailed, but not complex, job instructions. (Tr. 540.) With respect to making personal and social adjustment, they opined that Plaintiff had: (1) a good ability to maintain his appearance, manage his funds/schedule, and leave home on his own; (2) a fair ability to socialize and relate predictably in social situations; and (3) a poor ability to behave in an emotionally stable manner. (*Id.*)

On December 2, 2010, Dr. Brady completed another medical source statement.

6

(Tr. 541-42.) With respect to making occupational adjustments, she concluded that Plaintiff had: (1) a good-to-fair ability to maintain regular attendance and be punctual within customary tolerances;[3] and (2) a fair-to-poor ability to follow work rules, use judgment, and work in coordination with or proximity to others without being unduly distracted or distracting.[4]  (Tr. 541-42.)  Her conclusions were otherwise identical to those reflected in the November 18, 2010 medical source statement she completed with Mr. Lee.  (Tr. 541-42.)

### 3. Agency Reports

On October 23, 2008, agency consultant Mel Zwissler, Ph.D., performed a psychiatric review technique and mental RFC assessment.  (Tr. 328-41, 342-45.)  He opined that Plaintiff had depressive symptoms.  (Tr. 331.)  He determined that Plaintiff was: (1) mildly limited in activities of daily living; and in maintaining concentration, persistence and pace; and (2) moderately limited in maintaining social functioning.  (Tr. 338.)  He also assigned Plaintiff moderate limitations in the ability to: carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions

---

[3]  In their November 18, 2010, medical source statement, Dr. Brady and Mr. Lee assigned Plaintiff a good ability in this area.  (Tr. 539.)

[4]  In their November 18, 2010, medical source statement, Dr. Brady and Mr. Lee assigned Plaintiff a fair ability in these areas.  (Tr. 539.)

and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.  (Tr. 342-43.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

Plaintiff testified as follows at his December 20, 2010 administrative hearing:

Plaintiff could not work because he was depressed every day, had no will to do anything, and was "just lost for words."  (Tr. 32-33.)  Plaintiff had treated with Dr. Zuchowski for 15 years before switching to Dr. Brady after Dr. Zuchowski left Far West.  (Tr. 33.)  He slept for four hours at a time because he was stressed about money and many of his family members had died.  (Tr. 36-37.)  Plaintiff did not get along well with others because he had been abused during his childhood.  (Tr. 38.)  He had been dismissed from jobs after "get[ing] . . . vulgar" with others.  (*Id.*)  Plaintiff had friends, but had "lost a lot of friends and it's come to a mental thing."  (*Id.*)

Plaintiff was able to concentrate on television when he "really concentrat[ed] and like[d] the program."  (Tr. 39.)  Otherwise, he would read.  (*Id.*)  Plaintiff felt that he was "a totally different person" while taking the Adderall and the Xanax.  (Tr. 47.)  He could not work while taking those medications, however, because "it says on all the bottles I can't drive and do any functional things with any machinery, or I couldn't concentrate on Xanax either.  So, I don't know what I'd really be able to do."  (Tr. 47-48.)

    **2.     Vocational Expert's Hearing Testimony**

The ALJ described a hypothetical individual of Plaintiff's age, education and work

8

history, with various physical limitations, and the following mental limitations:

> This individual is limited to simple, routine, repetitive tasks.
> This individual cannot deal with more than occasional
> changes in a routine work setting or more than occasional
> interaction with the public or coworkers.

(Tr. 51-52.)  The VE opined that, while the hypothetical individual could not perform Plaintiff's past relevant work, that individual would perform work as a folder, bagger, laundry worker or cafeteria attendant.  (Tr. 52-53.)  When the ALJ added the limitation that the individual could not perform at a strict production rate, the VE testified that the additional limitation did not change his testimony.  (Tr. 53.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of

disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff meets the insured status requirements of the Act through June 30, 2011.

2. Plaintiff has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date.

3. Plaintiff has the following severe impairments: degenerative disc disease, status post melanoma excision, major depressive disorder, and anxiety disorder.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Plaintiff lacks the RFC to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) and must perform no more than occasional stooping or crouching. He is limited to simple, routine, repetitive tasks; he

10

cannot deal with more than occasional changes in a routine work setting; he must not work at jobs that require work performed at a strict production-rate pace; and he must have no more than occasional interaction with the public or co-workers.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on September 21, 1967 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Plaintiff has at least a high school education and is able to communicate in English.

\* \* \*

10. Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff has not been under a disability, as defined in the Act, from January 1, 2007 through the date of this decision.

(Tr. 15-24.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.

11

1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

Plaintiff argues that the ALJ erred by failing to discuss the opinions of two of Plaintiff's treating physicians, and by failing to incorporate the conclusions of another of Plaintiff's treating physicians into Plaintiff's RFC despite having granted that opinion controlling weight. This Court considers each of these arguments in turn.

### 1. Whether the ALJ Erred in Assessing the Opinions of Dr. Brady and Mr. Lee

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). Conversely, a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th

12

Cir. 1993). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. See *Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id.*

Here, Plaintiff argues that the ALJ violated the treating physician rule by failing to discuss the opinions of Mr. Lee and Dr. Brady, who treated Plaintiff at Far West. Plaintiff's argument with respect to Mr. Lee lacks merit. It is well established that "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006). Although the record reflects that Mr. Lee began counseling Plaintiff in June 2009 and continued through the date of the administrative hearing, there is no evidence in the record that Mr. Lee qualifies as an "acceptable medical source." Under the relevant regulations, acceptable medical sources include licensed physicians and licensed or certified psychologists, but not certified counsels. See 20 C.F.R. § 404.1513(a)(1)-(5); *see also* 20 C.F.R. § 404.1513(d)(1) (indicating that medical

13

personnel not listed in subsection (a) qualify as "other sources").  Although Plaintiff repeatedly refers to Mr. Lee as a doctor, each instance of Mr. Lee's signature in the record reflects that he has a master's degree in education, and is a certified professional counselor.  (*See, e.g.,* Tr. 540.)  There is no evidence that he is a physician or psychologist.  Accordingly, under the relevant regulations, Mr. Lee does not qualify as an acceptable medical source, and his opinion cannot be entitled to controlling weight.

Plaintiff's argument regarding Dr. Brady, however, has some merit.  The record reflects that Dr. Brady began treating Plaintiff in July 2010 and evaluated his medication regimen at least three times through December 2010.  (Tr. 580, 581, 583.)  Accordingly, the record establishes that Dr. Brady was a treating physician whose opinion was entitled to controlling weight unless the ALJ explained his reasons for assigning it less weight.  A review of the ALJ's opinion reveals that the ALJ did not discuss any aspect of Dr. Brady's opinions regarding Plaintiff's mental limitations.

Although an ALJ is generally required to discuss a treating source's opinion and describe the weight assigned to that opinion, here, the ALJ's failure to explicitly discuss Dr. Brady's opinion does not constitute error.  Rather, in this case, the ALJ's discussion of the other evidence related to Plaintiff's mental conditions provides a sufficient basis for his rejection of Dr. Brady's opinion, *see Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-71 (6th Cir. 2006), and affords this Court the opportunity to meaningfully review the ALJ's opinion.  In *Nelson*, the ALJ failed to discuss the opinions of two of the plaintiff's treating physicians, and the plaintiff argued that this failure constituted a basis for remand.  The Sixth Circuit disagreed, concluding that "the ALJ's evaluation of [the plaintiff's] mental impairments indirectly attacks both the supportability of [the treating

14

physicians'] opinions and the consistency of those opinions with the rest of the record evidence." 195 F. App'x at 470. Because the ALJ's discussion of the other evidence "implicitly provided sufficient reasons for not giving . . . controlling weight" to the treating physicians, the Sixth Circuit concluded that the ALJ's decision satisfied the purposes of the controlling physician rule. *Id.* at 472.

In this case, in his decision, the ALJ discussed the opinion of other physicians and psychologists who had examined Plaintiff or reviewed his records, and noted that they had concluded that Plaintiff was only moderately limited in his ability to work:

> [Dr. Zuchowski] completed a mental medical source statement in June, 2009 that indicated, in general, [Plaintiff's] ability to perform in work-related settings was no more than moderately limited.
>
> * * *
>
> No demonstrable impediments suggest that [Plaintiff] cannot return to work-related activities and perform simple, routine, repetitive tasks with no more than occasional changes in a routine work setting, with no work performed at a strict production rate pace, and no more than occasional interaction with the public and co-workers.
>
> The opinions of both DDS evaluating physicians find the [Plaintiff] has the [RFC] to perform work-related activities with corresponding restrictions. The undersigned finds these opinions are consistent with the record as a whole.

(Tr. 21.) In her two mental medical source statements, Dr. Brady assigned Plaintiff greater limitations than those assigned by Dr. Zuchowski and the agency consultants who reviewed Plaintiff's records. Although the ALJ did not specifically discuss Dr. Brady's opinions, his discussion of the other medical evidence related to Plaintiff's mental condition implicitly rejects Dr. Brady's opinions as not supported by, and

15

inconsistent with, the rest of the record.  For example, the ALJ cited to a less restrictive set of limitations assigned by Dr. Zuchowski, and noted that agency consultants had opined that Plaintiff could work.  His conclusion that these opinions were consistent with the record "indirectly attack[ed]" the consistency of Dr. Brady's opinion with the record. *Nelson*, 195 F. App'x at 472.  Further, the ALJ's observation that "no demonstrable impediment" rendered Plaintiff incapable of working implicitly undermined the supportability of Dr. Brady's opinions.  *Id*.  Accordingly, as in *Nelson*, the ALJ's decision satisfies the procedural safeguards of the treating physician rule, and Plaintiff is not entitled to remand on this basis.[5]

### 2. Whether the ALJ Erred in Failing to Adopt Dr. Zuchowski's Opinion in its Entirety

Plaintiff also argues that the ALJ erred in failing to adopt Dr. Zuchowski's opinion in its entirety despite having afforded that opinion controlling weight.  Specifically, Plaintiff notes that the ALJ did not adopt Dr. Zuchowski's finding that Plaintiff had a fair-to-poor ability to complete a normal workday and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an

---

[5]  The Commissioner argues that the ALJ did not err in failing to discuss Dr. Brady's opinion because, *inter alia*, Dr. Brady's opinions were expressed via check box forms. However, in this case, the ALJ did not identify this reason as a basis for declining to assign controlling weight to Dr. Brady's opinion.  Accordingly, the Commissioner's arguments constitute *post hoc* rationalizations that this Court cannot accept.  *See Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) ("'[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50 (1983) (citation omitted)).

unreasonable number and length of rest periods.[6]  Plaintiff further contends that, if the ALJ declined to grant this opinion controlling weight, he erred in failing to specify and explain the weight he assigned to it.  The Commissioner argues that the ALJ adequately accounted for this limitation by restricting Plaintiff to no production-rate work."[7]

The ALJ did not explicitly discuss the weight he assigned to Dr. Zuchowski's opinion.  However, he accommodated Plaintiff's inability to complete a normal workday and workweek with limitations in his determination of Plaintiff's RFC.  The ALJ limited Plaintiff to "simple, routine, repetitive tasks," with "no more than occasional changes in a routine work setting" and no "work performed at a strict production-rate pace."  (Tr. 17.)  These restrictions accommodate Plaintiff's limitations in this regard.  *See Simpkins v. Comm'r of Soc. Sec.*, No. 1:12-CV-640, 2013 WL 775356, *12 (N.D. Ohio Feb. 27, 2013) (Knepp, Mag. J.) (slip copy) (finding that limiting the plaintiff to "simple, short instructions; simple work-related decisions; and few workplace changes" accommodated the plaintiff's "poor ability to deal with stress and complete a normal workday and workweek without interruptions from psychologically based symptoms" and that precluded "work [performed] at a production rate pace" addressed Plaintiff's "poor ability to perform at a consistent pace").  Accordingly, Plaintiff's argument that the ALJ

---

[6]  In his Brief, Plaintiff contends that Dr. Zuchowski assigned him a "poor" rating in this area.  (Pl. Br. at 12.)  However, in her medical source statement, Dr. Zuchowski drew a horizontal arrow between "fair" and "poor" with respect to this area.  (Tr. 448.)

[7]  The Commissioner also argues that Dr. Zuchowski's finding in this context was not supported by the record.  However, the ALJ did not articulate this as a basis for failing to adopt this limitation.  *See Berryhill*, 4 F.3d 993 at *6.

17

failed to adopt Dr. Zuchowski's opinion regarding Plaintiff's ability to complete a normal workday and workweek lacks merit.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ <em>Nancy A. Vecchiarelli</em><br>U.S. Magistrate Judge

Date: March 8, 2013